OPINION OF THE COURT
B. Marc Mogil, J.
We Americans, and especially New Yorkers, have long been a traveling people. Concurrent with that ongoing trend, and catering to a legitimate need, the automobile rental industry has grown enormously. Encompassing national rental chains, these purveyors of convenient transportation advertise their competitive ability for customers to very rapidly "sign and go”, since most arrangements are done in advance by credit card, and all agreement forms are standard. Ergo, with these virtually identical computer-generated, predrawn "take-it-as-it-is-or-leave-it” contracts, rental customers usually merely quickly initial and sign these forms without thoroughly reading them. They then may obtain a rapid and lay explanation of portions of the agreement (if at all) from the friendly agents behind the counter, who hasten their departure in predesignated vehicles.
Certainly, it is a wonderfully convenient system if all goes as planned without complication. However, situations do not reach a court of law unless there are complications, and this is no exception. What this court has before it are two of the distinct possibilities when renting a car in the manner as described above (especially for a vehicle which will at some point in time make an appearance upon the roadways of the City of New York): the first, an intervening theft; the second, an ensuing dispute as to the interpretation of the effects of the *531 so-called "Property Damage Waiver” and the rationale for the very substantial daily fee charged renters for that option.
This court is well aware that its findings in this case may well ultimately reach far beyond the borders of the State of New York, and the specific dispute at bar; the language I must interpret in the general contract used by the plaintiff rental car company is utilized throughout the Nation by most (if not all) national car rental companies. Thus, many understandably have an interest in its outcome. For this reason, I permitted (yea encouraged) time for both counsel to submit posttrial memoranda of law, as each saw fit.
The plaintiff, a car rental company, seeks to recover the value of a rental car leased by the defendants which was stolen after one of the defendants left the key in the ignition. After a trial held on August 4, 1988, this court makes the following findings of fact and conclusions of law.
On June 3, 1986, one of the defendants, Lillian Fortunato, rented a car from the plaintiff for one week pursuant to a written lease agreement. The other defendant, Audrey Giordano, was a named additional driver on the lease.
On the evening of June 9, 1986, Giordano parked the rental car in front of her home. Upon leaving the car, Giordano realized that the only set of car keys was in the ignition. However, the windows were closed, the doors were locked, the ignition was turned off and the gear was in the park position. Giordano, believing that the car was secure, did not call the 24-hour hotline to notify the plaintiff of the problem. Instead, she went into her home for the night.
The next morning Giordano discovered that the car had been stolen and reported the theft to the plaintiff and the police. The car was recovered that same morning by the police. The ignition keys were still inside the vehicle but the car had been severely damaged. Due to the extensive body damage to the vehicle, the plaintiff sold the car to a salvage dealer for $350.
The plaintiff commenced this action against the defendants for the value of the vehicle under two theories of liability: breach of contract and negligence. Under its first cause of action, the plaintiff claims that the defendants breached the rental agreement by Giordano’s failure to remove the ignition keys from the vehicle when she left the vehicle unattended. Under the lease, the defendants accepted a "Physical Damage Responsibility” option for which they paid an additional $7.95 *532 per day. Pursuant to that option, the plaintiff waived its right to recover for any loss or damage to the vehicle if the loss or damage to the vehicle was not caused by the defendants’ breach of any term of the lease. If the defendants breached any term of the lease, the damage waiver ceased to be in effect and the defendants would be liable for the full amount of the damage. The plaintiff alleges that, pursuant to paragraph 14 of the rental agreement, the defendants had an obligation to remove the ignition keys from the vehicle and the failure to do so rescinded the waiver of physical damage responsibility and imposed liability for all subsequent loss and damage to the vehicle.
Paragraph 14 of the rental agreement provides as follows:
"14. Responsibility for Damages. I am responsible and will pay you for all loss and damage to the vehicle regardless of who is at fault. Only if I do not violate any of the terms of this Agreement, my liability for all loss or damage (except theft of the vehicle if left unattended without all windows and doors closed and locked, and the ignition key removed, or loss or theft of tires, tools accessories, equipment, keys or vehicle documents) will be limited to:
"(a) The amount shown in the area labeled 'Physical Damage Responsibility’, if I initialed the box on Page 2 labeled T do not accept’ at the time of the rental.
"(b) Zero if I initialed the box labeled T accept’ in the area labeled 'Physical Damage Responsibility’ at the time I rented the vehicle and agreed to pay the extra charge. I understand that Physical Damage Waiver is not insurance. If I violate any of the terms of this Agreement, I will be responsible for the full amount of damages even if I initialed the box labeled Physical Damage Waiver.”
The issue is whether the defendants, by Giordano’s failure to remove the keys from the ignition, breached the part of paragraph 14 which imposed liability upon the defendants for the loss caused by theft "if [the vehicle was] left unattended without all windows and doors closed and locked, and the ignition key removed”. According to the plaintiff, each of the various acts of securing the vehicle were independent obligations and the nonperformance of one of these acts, by itself, constituted a violation of the entire lease. The defendants, however, assert that the acts are interconnected and require omission of every act before liability will be imposed.
When the meaning of a contractual term is plain and direct, *533 the court must interpret the contract according to the plain meaning of the language. (Wing v Wing, 112 AD2d 932 [2d Dept 1985].) However, when the clause is ambiguous and subject to two or more interpretations, the court may interpret the clause using well-established rules of construction.
This court finds that the clause contained in paragraph 14 is ambiguous since the language is susceptible to two reasonable interpretations. These different interpretations are possible because the lease does not clearly state that the failure to secure the car in even one of the ways set forth in the clause would result in a violation of the lease.* It is a general rule that an ambiguous clause must be construed most strongly against the party who drafted it and in favor of a party who had no voice in the selection of the language. (Jacobson v Sassower, 66 NY2d 991 [1985].) The lease agreement was a two-sided form prepared entirely by the plaintiff. One side of the lease contained 25 preprinted terms of the lease; the reverse side of the lease was an invoice for the rental car and contained Fortunato’s signature of acknowledgement to the terms of the lease. Since the clause is ambiguous, and was drafted by the plaintiff, it must be construed in favor of the lessee. This court finds that, under the lease, the lessee must fail to do every enumerated act to secure the vehicle before the lease will be deemed violated.
Moreover, the strict construction of the clause to limit liability to the lessee is consistent with the "Physical Damage Waiver” opted by the defendants. The defendants sought to diminish their liability for physical damage to the vehicle by paying the plaintiff an additional amount for each day of the lease. If the ambiguity in the clause which imposes liability is construed as the plaintiff wishes, the applicability of the waiver of liability for physical damage becomes so restricted that it is meaningless. Since the parties intended for the plaintiff to waive the defendants’ liability for physical damage, this court will construe the contract in a manner which enhances that intent.
Accordingly, this court finds that the defendants’ failure to remove the ignition key from the locked, parked car was not in violation of the lease agreement and awards judgment to the defendants on the first cause of action.
*534 The plaintiff also maintains that Giordano was negligent when she left the ignition key in the car and that this negligence enabled the theft to occur. The lease agreement constituted a bailment for mutual hire in which the bailee (defendants) was only responsible for a loss caused by its negligence unless the bailee had violated a term of the contract. As noted above, this court has found that the defendants did not violate a term of the contract. Moreover, the plaintiff does not contend that the agreement expressly enlarged the defendants’ obligation for the condition of the vehicle. Accordingly, the issue is whether the loss of the vehicle was caused by a negligent act of the defendants.
The failure to deliver a bailed item presents a prima facie case of negligence. The presumption of negligence may be rebutted by a demonstration that the bailed item was stolen. The burden then shifts to the bailor plaintiff to show that the bailee defendants’ negligence or lack of reasonable care caused the theft to occur. (Pavesi v Carollo, 105 AD2d 832 [2d Dept 1984]; Stephens v Katz Parking Sys., 75 Misc 2d 690, 692 [Civ Ct, NY County 1973].)
This court finds that the accidental failure to remove the ignition key, by itself, does not show that the defendants failed to exercise reasonable care in securing the vehicle. Plainly, the failure to remove the key from the ignition switch is evidence of a lack of reasonable care in safeguarding a vehicle from theft. Vehicle and Traffic Law § 1210 (a) mandates that every driver when leaving a vehicle must stop the engine, lock the ignition, remove the key from the vehicle, set the brake and turn the wheels to the curb if parked on an incline. A failure to remove the keys from the ignition in violation of the statute will render the owner liable for subsequent injuries and property damages to a third party caused by a thief if it was foreseeable that a thief would steal the vehicle and cause such damage. (Guaspari v Gorsky, 36 AD2d 225 [4th Dept 1971], appeal dismissed 29 NY2d 891 [1972].) But that statute was intended, in part, to provide third parties with a basis of liability against an owner whose negligence created the opportunity for a thief to steal a vehicle. It was not intended to provide strict liability or to enlarge a bailee’s obligation to secure a bailed item.
In the instant case, the car was parked on a residential street in front of Giordano’s home. The ignition was off, the gear was in the park position, the windows were closed and the doors were closed and locked. While the presence of keys *535 in the ignition is enticing to a thief, the visibility of those keys was diminished since it was night. Under these circumstances, the court finds that Giordano’s accidental failure to remove the key from the ignition did not in and of itself constitute a negligent caring for the vehicle which enabled the theft to occur. Accordingly, the court finds that the plaintiff has not proven that the defendants were negligent and directs judgment for the defendants on the second cause of action.
Decision for defendants dismissing the action.

 The plaintiff should be reminded that pursuant to General Obligations Law § 5-702 it is obligated to prepare its consumer lease agreements using plain language which is readily capable of being understood by the consumer.